IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| INDUSTRIAL PRINT TECHNOLOGIES LLC, a Texas Corporation, | ) ) | Civil Action No. 2:14-CV-892 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| O'NEIL DATA SYSTEMS, INC., a California Corporation, | ) ) | |
| HEWLETT-PACKARD COMPANY, a Delaware Corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Industrial Print Technologies LLC ("IPT") complains against Defendants O'Neil Data Systems, Inc. and Hewlett Packard Company (collectively, "Defendants"), as follows:

### NATURE OF ACTION

This is an action for patent infringement pursuant to 35 U.S.C. § 271. The patented technology, which is licensed exclusively to IPT, relates to industrial ink jet printing presses and provides systems and methods for controlling multiple inkjet printheads arranged within an inkjet printing press. The patented technology enables inkjet printing presses to synchronize multiple inkjet printheads, regardless of changes in the speed of the printing press and regardless of the position of the printheads along a web of paper within the inkjet printing press. Defendants manufacture, sell and/or use inkjet printing presses that embody systems and methods that infringe the patented technology.

## THE PARTIES

1.      Plaintiff IPT is a corporation organized and existing under the laws of the State of Texas.  IPT is in the business of licensing patented technology owned by Mr. Forrest P. Gauthier. IPT is the exclusive licensee of U.S. Patent Nos. 6,145,946 and 6,493,106.

2.      Defendant O'Neil Data Systems, Inc. ("O'Neil") is a corporation incorporated under the laws of California with its principal place of business at 12655 Beatrice Street, Los Angeles, California.  O'Neil is registered to do business in Texas and has a designated registered agent in Texas for purposes of service of process.  O'Neil conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, using high speed industrial-sized inkjet printing presses and promoting, offering to sell and selling products created by high speed industrial-sized inkjet printing presses in this District.

3.      Defendant Hewlett Packard Company ("HP") is a corporation incorporated under the laws of Delaware with its principal place of business at 3000 Hanover Street, Palo Alto, California. HP's Printing business unit makes, uses, offers to sell and sells inkjet printing presses.  HP is registered to do business in Texas and has a designated registered agent in Texas for purposes of service of process.  HP conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, using, promoting, offering to sell, selling and/or importing high speed industrial-sized inkjet printing presses in this District, and enabling end-user purchasers to use such machines in this District.

4.      Upon information and belief, O'Neil and HP are jointly and severally liable and/or joint tortfeasors with one another with respect to the matters alleged herein.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business conducted in this forum, including (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed their products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within this District.

7.      Defendant O'Neil maintains systematic, continuous and ongoing business operations within the State of Texas and this District, through which it uses high speed industrial-sized inkjet printing presses; promotes, offers to sell, and sells products created by high speed industrial-sized inkjet printing presses and/or services requiring the use of high speed industrial-sized inkjet printing presses.  O'Neil's facilities include a plant that it maintains in Plano, Texas, at which it operates a collection of printing presses manufactured and supplied by HP, including at least a T400 inkjet web press and a T200 inkjet web press.

8.      On information and belief, defendant HP maintains systematic, continuous and ongoing business operations within the State of Texas and this District, through which it uses, promotes, offers to sell, sells, and/or imports high speed industrial-sized inkjet printing presses.  HP maintains facilities including a sales office in Plano, Texas, through which it uses, promotes, offers

to sell, sells, and/or imports high speed industrial-sized printing presses.  Upon information and

belief, HP provides product maintenance and support services in this District.  Further, HP has

conducted marketing activities in Plano, Texas, including an open-house event held on or about

March 5, 2012 at which HP demonstrated and promoted its inkjet printing presses.

9.      Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b)

because each Defendant is subject to personal jurisdiction in this District, resides in, has regularly

conducted business in this District and/or has committed acts of patent infringement in this District.

### FIRST CAUSE OF ACTION – INFRINGEMENT OF '946 PATENT

10.      Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 9,

as if fully set forth herein.

11.      On November 14, 2000, U.S. Patent No. 6,145,946 ("the '946 patent"), entitled

"Method For Generating A Stroke Frequency Signal On A Plurality Of Ink Jet Printheads," a copy

of which is attached hereto as Exhibit A, was duly and legally issued to the inventors, Forrest P.

Gauthier and Dimitrije L. Jovic.  Messrs. Gauthier and Jovic assigned all right, title, and interest in

the '946 patent to Varis Corp., which subsequently assigned all right, title, and interest in the '946

patent to Tesseron Ltd.  Tesseron subsequently assigned all right, title, and interest in the '946 patent

to Forrest P. Gauthier.  Mr. Gauthier is the present owner of all right, title, and interest in the '946

patent.  Prior to the commencement of this action, Mr. Gauthier exclusively licensed all substantial

rights in and to the '946 patent to Acacia Research Group, LLC ("ARG").  The license to ARG was

made subject only to certain prior non-exclusive license agreements and a limited non-exclusive and

non-transferable personal license grant back to Mr. Gauthier from ARG to make, use, offer to sell or

sell his own products and services.  Neither the prior licensees nor Mr. Gauthier owns any right to

sue for or collect past, present or future damages or to seek and obtain injunctive or any other relief for infringement of the '946 patent.

12.     Mr. Gauthier further granted ARG the right to assign its license rights to a designated affiliate of ARG.  Prior to the commencement of this action, ARG transferred and assigned to IPT, as its wholly owned designated affiliate, all of ARG's rights, obligations, interests and liabilities under the license agreement with Mr. Gauthier, and IPT assumed all such rights, obligations, interests and liabilities of ARG under such license agreement.  IPT thus owns an exclusive license to all substantial rights under the '946 patent.

13.     The rights exclusively licensed to IPT, as ARG's designated affiliate, include the worldwide, exclusive right and license to make, have made, use, import, offer to sell, and sell products covered by the '946 patent, subject only to the limited rights of prior licensees and the limited license back to Mr. Gauthier.  IPT owns the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement by any party of any claim of the '946 patent.  IPT further owns the exclusive right to exercise its sole judgment to decide to institute enforcement actions against any or all persons or entities that IPT believes are infringing the '946 patent, the exclusive right to bring suit to enforce the '946 patent, and the exclusive right to settle any claims made under the '946 patent.  IPT also owns the sole right to select counsel, to direct all litigation including this action, and to negotiate and determine the terms of any settlement or other disposition of all litigation including this action.  IPT also owns the sole control over reexaminations and continuing prosecution of the '946 patent and related patent applications.  IPT thus has standing to bring this action under the '946 patent in its own name.

14.     Defendant O'Neil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '946 patent pursuant to 35 U.S.C. § 271(a) by using high speed industrial-sized inkjet printing presses, which are covered by the '946 patent, within the United States and within this District.  O'Neil has been and is engaged in direct infringing activities with regard to at least one or models of HP's Inkjet Web Presses, e.g., T200, T300, T350, and T400 presses (hereinafter "HP Inkjet Web Presses").

15.     Defendant O'Neil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '946 patent pursuant to 35 U.S.C. § 271(g) by selling and/or offering to sell print materials to its customers within the United States which are made using HP Inkjet Web Presses practicing methods covered by the '946 patent.

16.     The service of this Complaint will provide O'Neil with actual notice of the '946 patent and of Plaintiff's infringement allegations.

17.     O'Neil's direct infringement of the '946 patent has injured IPT.  IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

18.     Unless enjoined by the Court, Defendant O'Neil will continue to injure IPT by directly infringing the '946 patent, while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '946 patent.  O'Neil's future acts of infringement will constitute continuing willful infringement of the '946 patent.

19.     HP itself, and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '946 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, importing, selling and/or offering to sell high speed industrial-sized inkjet printing presses, which are covered by the '946 patent, within the United States and within this District.  HP has been and is engaged in direct infringing activities with regard to at least the HP

Inkjet Web Presses. HP's infringing printing presses include the specific models of presses sold to O'Neil.

20.     HP had actual knowledge of the '946 patent and the '106 patent.  Specifically, HP obtained knowledge of these patents through Indigo N.V., which is now a division of HP.  Tesseron, Ltd., as the then-current owner of the '946 patent and later the '106 patent, sent multiple notice letters to Indigo N.V.   A letter dated September 11, 2002 provided an opportunity to license Tesseron's entire patent portfolio, and specifically listed the '946 patent.  HP sent a response letter dated December 23, 2002 indicating that the patents listed in the September 11 letter were under review.  Tesseron sent a second letter to Indigo dated June 25, 2003, once again suggesting discussions of a license to Tesseron's entire patent portfolio, and also listing the '106 patent. Tesseron sent a third letter to Indigo dated February 18, 2005.  This letter also offered a license to the entire portfolio of Tesseron's patents, listed several new patents within that portfolio, and attached copies of complaints that had been filed against Xerox Corporation and GMC Software AG, two of HP's competitors in the digital printing industry.  HP acknowledged receipt of the letter by sending a response dated April 15, 2005.

21.     The service of the Complaint will provide HP with further actual notice of the '946 patent and of Plaintiff's infringement allegations herein.

22.     Thus, HP has had actual or constructive knowledge of the '946 patent and the scope of its claims since at least September 11, 2002.  Despite its awareness of the '946 patent and the technology claimed within the '946 patent, HP began to supply, sell and/or offer to sell HP Inkjet Web Presses in or about 2010.  HP itself, and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and continues to induce the direct infringement of the '946 patent by O'Neil and other HP customers pursuant to 35 U.S.C. § 271(b) at least by one or more of supplying,

offering for sale and selling HP Inkjet Web Presses, which were designed and intended to practice methods covered by the '946 patent, and by supplying related training and support materials and services.  Despite its awareness of the '946 patent and of the technology claimed within the '946 patent, HP has continued these acts of inducement with specific intent to cause and/or encourage such direct infringement of the '946 patent and/or with deliberate indifference of a known risk or willful blindness that such activities would cause and/or encourage direct infringement of the '946 patent.

23.     HP's direct infringement and/or inducement to infringe the '946 patent has injured IPT.  IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

24.     Unless enjoined by the Court, HP will continue to injure IPT by directly infringing and/or inducing the infringement of the '946 patent.

25.     Upon information and belief, HP has continued its infringement notwithstanding its actual knowledge of the '946 patent and while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '946 patent.  HP's infringement of the '946 patent has been and will continue to be willful and deliberate.

### SECOND CAUSE OF ACTION – INFRINGEMENT OF '106 PATENT

26.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 25, as if fully set forth herein.

27.     On December 10, 2002, U.S. Patent No. 6,493,106 ("the '106 patent"), entitled "Method For Synchronizing Pixel Deposition Frequencies Between A Plurality Of Print Engines," a copy of which is attached hereto as Exhibit B, was duly and legally issued to the inventors, Forrest P. Gauthier and Dimitrije L. Jovic.  Messrs. Gauthier and Jovic assigned all right, title, and interest

in the '106 patent to Varis Corp., which subsequently assigned all right, title, and interest in the '106 patent to Tesseron Ltd.  Tesseron subsequently assigned all right, title, and interest in the '106 patent to Forrest P. Gauthier.  Mr. Gauthier is the present owner of all right, title, and interest in the '106 patent.  Prior to the commencement of this action, Mr. Gauthier exclusively licensed all substantial rights in and to the '106 patent to Acacia Research Group, LLC ("ARG").  The license to ARG was made subject only to certain prior non-exclusive license agreements and a limited non-exclusive and non-transferable personal license grant back to Mr. Gauthier from ARG to make, use, offer to sell or sell his own products and services.  Neither the prior licensees nor Mr. Gauthier owns any right to sue for or collect past, present or future damages or to seek and obtain injunctive or any other relief for infringement of the '106 patent.

28.     Mr. Gauthier further granted ARG the right to assign its license rights to a designated affiliate of ARG.  Prior to the commencement of this action, ARG transferred and assigned to IPT, as its wholly owned designated affiliate, all of ARG's rights, obligations, interests and liabilities under the license agreement with Mr. Gauthier, and IPT assumed all such rights, obligations, interests and liabilities of ARG under such license agreement.  IPT thus owns an exclusive license to all substantial rights under the '106 patent.

29.     The rights exclusively licensed to IPT, as ARG's designated affiliate, include the worldwide, exclusive right and license to make, have made, use, import, offer to sell, and sell products covered by the '106 patent, subject only to the limited rights of prior licensees and the limited license back to Mr. Gauthier.  IPT owns the exclusive right to grant sublicenses, to sue for and collect past, present, and future damages, and to seek and obtain injunctive or any other relief for infringement by any party of any claim of the '106 patent.  IPT further owns the exclusive right to exercise its sole judgment to decide to institute enforcement actions against any or all persons or

entities that IPT believes are infringing the '106 patent, the exclusive right to bring suit to enforce the '106 patent, and the exclusive right to settle any claims made under the '106 patent. IPT also owns the sole right to select counsel, to direct all litigation including this action, and to negotiate and determine the terms of any settlement or other disposition of all litigation including this action. IPT also owns the sole control over reexaminations and continuing prosecution of the '106 patent and related patent applications. IPT thus has standing to bring this action under the '106 patent in its own name.

30.     Defendant O'Neil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '106 patent pursuant to 35 U.S.C. § 271(a) by using high speed industrial-sized inkjet printing presses, which are covered by the '106 patent, within the United States and within this District. O'Neil has been and is engaged in direct infringing activities with regard to at least HP's Inkjet Web Presses, e.g., T200, T300, T350, and T400 presses (hereinafter "HP Inkjet Web Presses").

31.     Defendant O'Neil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '106 patent pursuant to 35 U.S.C. § 271(g) by selling and/or offering to sell print materials to its customers within the United States which are made using HP Inkjet Web Presses practicing methods covered by the '106 patent.

32.     The service of this Complaint will provide O'Neil with actual notice of the '106 patent and of Plaintiff's infringement allegations.

33.     O'Neil's direct infringement of the '106 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

34.     Unless enjoined by the Court, Defendant O'Neil will continue to injure IPT by directly infringing the '106 patent, while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '106 patent.  O'Neil's future acts of infringement will constitute continuing willful infringement of the '106 patent.

35.     HP itself, and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '106 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, importing, selling and/or offering to sell high speed industrial-sized inkjet printing presses, which are covered by the '106 patent, within the United States and within this District.  HP has been and is engaged in direct infringing activities with regard to at least the HP Inkjet Web Presses.

36.     Upon information and belief, HP itself, and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and continues to induce the direct infringement of the '106 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of supplying, offering for sale and selling HP Inkjet Web Presses with specific intent to cause and/or encourage such direct infringement of the '106 patent and/or with deliberate indifference of a known risk or willful blindness that such activities would cause and/or encourage direct infringement of the '106 patent.

37.     HP has had actual or constructive knowledge of the '106 patent and the scope of its claims since at least June 25, 2003, and possibly as early as September 11, 2002.  Despite its awareness of the '106 patent and the technology claimed within the '106 patent, HP began to supply, sell and/or offer to sell HP Inkjet Web Presses in or about 2010.  HP itself, and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and continues to induce the direct infringement of the '106 patent by O'Neil and other HP customers pursuant to 35 U.S.C. § 271(b) at least by one or more of supplying, offering for sale and selling HP Inkjet Web Presses,

which were designed and intended to practice methods covered by the '106 patent, and by supplying related training and support materials and services.  Despite its awareness of the '106 patent and of the technology claimed within the '106 patent, HP has continued these acts of inducement with specific intent to cause and/or encourage such direct infringement of the '106 patent and/or with deliberate indifference of a known risk or willful blindness that such activities would cause and/or encourage direct infringement of the '106 patent.

38.     HP's direct infringement and/or inducement to infringe the '106 patent has injured IPT.  IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

39.     Unless enjoined by the Court, HP will continue to injure IPT by directly infringing and/or inducing the infringement of the '106 patent.

40.     Upon information and belief, HP has continued its infringement notwithstanding its actual knowledge of the '106 patent and while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '106 patent.  HP's infringement of the '106 patent has been and will continue to be willful and deliberate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for:

1.     Judgment that the '946 and '106 patents are each valid, enforceable, and infringed by HP;

2.     Judgment that Defendants' acts of patent infringement are willful;

3     A preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, subsidiaries and affiliated companies, and those persons acting in active

concert or participation therewith, from engaging in the aforesaid unlawful acts of patent infringement;

4.     An award of damages arising out of Defendants' acts of patent infringement, together with pre-judgment and post-judgment interest;

5.     Judgment that the damages so adjudged be trebled in accordance with 35 U.S.C. § 284;

6.     An award of Plaintiff's attorneys' fees, costs and expenses incurred in this action in accordance with 35 U.S.C. § 285; and

7.     Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

IPT demands trial by jury of all issues triable of right by a jury.

### RESERVATION OF RIGHTS

IPT's investigation is ongoing, and certain material information remains in the sole possession of HP or third parties, which will be obtained via discovery herein.  IPT expressly reserves the right to amend or supplement the causes of action set forth herein in accordance with Rule 15 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Date:    September 12,  2014          /s/ Timothy P. Maloney by permission Claire A.
                                     Henry
                                     Timothy P. Maloney (IL 6216483)
                                     LEAD ATTORNEY
                                     Mark W. Hetzler (IL 6217209)
                                     Alison A. Richards (IL 6285669)
                                     Nicole L. Little (IL 6297047)
                                     David A. Gosse (IL 6299892)
                                     FITCH, EVEN, TABIN & FLANNERY LLP
                                     120 South LaSalle Street, Suite 1600
                                     Chicago, Illinois 60603
                                     Telephone: (312) 577-7000
                                     Facsimile: (312) 577-7007

                                     Steven C. Schroer
                                     FITCH, EVEN, TABIN & FLANNERY LLP
                                     1942 Broadway , Suite 213
                                     Boulder, Colorado 80302
                                     Telephone: (303) 402-6966
                                     Facsimile: (303) 402-6970

                                     T. John Ward, Jr.
                                     (Texas State Bar No. 00794818)
                                     Email: jw@wsfirm.com
                                     J. Wesley Hill
                                     (Texas State Bar No. 24032294)
                                     Email: wh@wsfirm.com
                                     Clair Abernathy Henry
                                     (Texas State Bar No. 24053063)
                                     Email: claire@wsfirm.com
                                     WARD & SMITH LAW FIRM
                                     PO Box 1231
                                     Longview, TX 75606-1231
                                     Telephone: (903) 757-6400
                                     Facsimile: (903) 757-2323

                                     **ATTORNEYS FOR PLAINTIFF**